The TEXAS & PACIFIC RAILWAY COM-
PANY, Appellant,

v.

Lloyd HASTING et al., Appellees.

No. 5093.

Court of Civil Appeals of Texas.

El Paso.

June 8, 1955.

Rehearing Denied July 6, 1955.

Mays & Leonard, Sweetwater, Elton
Gilliland, Big Spring, for appellant.

Guilford Jones, Thomas & Thomas, Big
Spring, for appellees.

McGILL, Justice.

Appellees as plaintiffs filed this suit against appellant as defendant to recover damages alleged to have been sustained by plaintiffs in a grade crossing collision which occurred in Stanton, Texas, on October 14, 1952. A pick-up truck driven by Mrs. Mildred Hasting, wife of Lloyd Hasting, was struck by an eastbound freight train of defendant. Two insurance companies that had coverage on the Hasting vehicle intervened. Trial to a jury resulted in judgment for plaintiffs and intervenors against defendant for $16,976.57.

Appellant's first point, on which it lays much stress, is that the court erred in failing to hold that as a matter of law the stalling of the engine on Mrs. Hasting's truck when it got on appellant's track was a new and independent cause which intervened between excessive speed of defendant's train, which the jury found was a proximate cause of the collision, and the collision. Plaintiffs alleged:

"That on the occasion when Mrs. Hasting first saw the train approaching, the train was at least 1,400 feet away and was at such a distance that it was safe for Mrs. Hasting to proceed across the track which she began to do immediately. That just as her car became astride of the tracks the engine stopped whereupon the locomotive of the Texas & Pacific Railway Company, which was then proceeding in an easterly direction, ran into Mrs. Hasting's car and tore it up, causing the damages and personal injuries hereinafter described."

Mrs. Hasting testified on cross-examination:

"Q. You looked west and saw the train coming three or four blocks away? A. I imagine so.

"Q. You could see down the track? A. Yes, sir.

"Q. Then you started across the track? A. Yes, sir.

"Q. And at that time you had time to get across before the train got there, didn't you? A. Yes.

"Q. And you would have gotten across if your motor hadn't died? Isn't that right? A. That's right."

Her testimony was corroborated by the engineer on appellant's train. He testified:

"Q. At the time you first saw this pick-up approaching from the south and as it came upon the track, did the pick-up or not have time to get on across before you got there? A. If it hadn't stopped.

"Q. Do you often see many cars crossing at closer distance than that one was that don't ever get hit? A. Yes, sir.

"Q. If the pick-up had not stopped on the track it would not have been struck, is that correct? A. That's right."

The fact that the Hasting truck stalled on the track may properly be considered in passing on the issue of proximate cause, but this fact cannot be held as a matter of law to be the sole proximate cause of the collision, or an intervening cause. Polasek v. Gaines Bros., Tex.Civ.App., 185 S.W.2d 609.

Nor can it be said as a matter of law that a similar accident could not have reasonably been foreseen as a natural result of excessive speed. Missouri-Kansas-Texas R. Co. of Texas v. McLain, 133 Tex. 484, 126 S.W.2d 474.

 It is not required that the engineer should have foreseen that this particular accident would happen in the exact manner that it did happen. All that is required is that the injury be of such a general character as might reasonably have been anticipated, and that the injured party should be so situated with relation to the wrongful act that injury to her or to one similarly situated might reasonably have been foreseen. Akers v. Epperson, Tex.Civ.App., 172 S.W.2d 512.

It might reasonably have been foreseen that a car approaching the track as the Hasting car was approaching would for some reason stall when it got on the track. Such a happening is not unusual. Under such circumstances it requires no "prophetic ken" to reasonably anticipate that excessive speed might result in a collision. This point is overruled.

 The second point is that the court erred in failing to render judgment for appellant because Mrs. Hasting was guilty of contributory negligence as a matter of law, in violating Article 6701d, Section 86(c) R.C.S., and that such negligence was as a matter of law a proximate cause of the collision. The court submitted Special Issue No. 14, which was:

"Special Issue No. 14: Do you find from a preponderance of the evidence that as Mrs. Mildred Hasting approached the St. Mary's Street crossing, the train of The Texas & Pacific Railway Company was approaching said crossing within approximately fifteen hundred (1500) feet, and emitted a signal audible from such distance, and such train by reason of its speed or nearness to such crossing was an immediate hazard?" To which the jury answered "yes".

Section 86 provides as follows:

"Sec. 86. Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when: * * *."

It has been vigorously urged that this case should be reversed and rendered on the ground that Mrs. Hasting was guilty of negligence as a matter of law in proceeding across the tracks after an immediate hazard was created, and could therefore not

recover. We can not believe that a rigid enforcement of the statute was ever intended so as to preclude the possibility of a person safely crossing a railroad intersection after the facts creating an immediate hazard had come into being. The engineer's testimony, as well as the testimony of Mrs. Hasting are both clear in stating that she could have proceeded safely across had her motor not died in the middle of the track. Then too, in answer to Special Issue No. 16 the jury declined to find that she had attempted to cross this St. Mary's Street crossing without using ordinary care—in other words saying in effect that she had not failed to use ordinary care. It therefore seems clear that this case should be reversed and remanded for a new trial, and that upon such, and inclusion of the proper issues, it could be determined whether or not she could have or did proceed in safety after she had gotten to the crossing at a time defined by the statute as being one of immediate hazard. Had Special Issue (c) of Requested Issue 13 been submitted perhaps the result would have been more clear, but it does not seem to this writer that this statute should or could be interpreted and enforced in such a manner that when a person finds himself at a railroad crossing when and where an immediate hazard exists, that he can never thereafter again proceed with safety while such hazard exists. Why should the statute use the words "proceed with safety" if it were not contemplated that such is possible? It would have been easy to have stated in the statute that the driver could not proceed until the hazard had ended, but the statute does not so state. The statute merely requires a person in Mrs. Hasting's position to determine if it is safe to further proceed; it does not forbid her ever making the attempt. Other than the answer to Special Issue 16 there is no clear cut finding that she did or did not make a crossing in conformance with the requirements of the statute. We do not believe that the statute requires anything more than it says, and that is that she can proceed when safe, which in our opinion requires a specific finding to determine that fact.

It therefore seems clear that the jury should have had submitted to it the question as to whether or not she could have proceeded in safety after the conditions creating an immediate hazard had come into being.

■ Appellant's third point complains of the court's action in submitting Special Issue No. 13 over its objections, on the ground that there was no issue of emergency in the case. We agree with appellant's contention herein because the emergency did not arise until plaintiff's car was on the track. There was no contention on the part of appellant that plaintiff on this occasion was negligent in failing to get her pick-up off the track. Therefore the emergency could only be a defense to any claimed negligent act of Mrs. Hasting after she had her pick-up on the track and was therefore in a position of peril. We therefore think this point should be sustained.

■ Appellant's fourth point takes exception to the court's error in overruling appellants' objection to Special Issues Nos. 15, 16 and 17. In regard to Special Issue No. 15 we think appellant's objection is sound. Such issue was worded as follows:

"Special Issue No. 15: Do you find from a preponderance of the evidence that as Mrs. Mildred Hasting approached the St. Mary's Street crossing, an approaching train of the Texas and Pacific Railway Company was plainly visible to her and was in hazardous proximity to such crossing?"

This issue deals with the statutory requirements and the court in submitting the issue added the words "to her" as follows: Section (d) of Section 86 provides:

"An approaching train is plainly visible and is in hazardous proximity to such crossing."

The court added the words "to her" after the word "visible" in the above phrase. We do not think the statute intended such construction because by so doing the court

has put a limit on the meaning, and it is conceivable that a jury may have in answer to such question found or considered that a train was not visible to plaintiff merely because she was not looking. We do not think this was the intent of the statute. We therefore accordingly think this part of the fourth point is well taken.

■ Appellant also objects to Special Issue No. 16, which issue asks as follows:

"Do you find from the preponderance of the evidence that Mrs. Mildred Hasting proceeded in an attempt to cross the St. Mary's Street crossing when by the use of ordinary care she would have known that she could not do so safely?"

We think this objection is well taken, as it is clear that the statute did not anticipate or intend such a test (ordinary care) but rather that the proper issue to submit is whether or not at the time Mrs. Hasting attempted to cross she could do so safely, and then after that issue, if it is answered in the negative, whether or not her proceeding when she did so proceed was a proximate cause of the injury. There may be some doubt about the necessity of submitting a proximate cause issue, but certainly there can be no doubt that the proper issue after having answered issue No. 14 that she was confronted with an immediate hazard, would be to inquire whether or not she could have proceeded safely under the conditions as they then existed.

■ Appellant also objects to the submission of issue No. 17, which is as follows:

"Special Issue No. 17: Do you find from a preponderance of the evidence that the attempt of Mrs. Mildred Hasting to proceed over the St. Mary's Street crossing when by the use of ordinary care she would have known that she could not do so safely, if you have so found, was a proximate cause of the collision?"

In line with what we have already said, to-wit, that the test is whether or not after having found herself confronted with an immediate hazard she could have proceeded with safety to cross, which is the test, and not one involving ordinary care, we think that appellant's objection to Special Issue No. 17 is also well taken and should be sustained.

Appellant's fifth point complains of the court's failure to submit to the jury its suggested special issue or parts of Special Issue No. 3. We think appellant's position with reference to Section (c) is well taken. This section inquires as follows:

"Did Mrs. Hasting proceed in her attempt to cross St. Mary's crossing when she could not do so safely?"

In line with what we have said above this issue is clearly necessary to make a decisive determination of this matter, and so we think appellant's objection to the court's failure to submit this section is well taken. With regard to sub-section (d) which asks

"Was such attempt a proximate cause of the collision"

we think that issue could well have been submitted, and that the court was in error in not so doing. With regard to sub-section (b) we think this issue should have been submitted, but the jury having placed plaintiff under provisions of Art. 86, V.A.C.S. by its answer to issue No. 14, the error is rendered harmless, therefore we sustain the appellant's position with reference to subsections (c) and (d) of suggested issue 3, and believe the court to have been in error in failing to submit these parts of this issue. The court's failure to submit sub-section (c), for example, leaves the determination of whether Mrs. Hasting could or did proceed when she could safely do so after having been confronted with an immediate hazard completely unanswered, and we think that was fatal to a proper trial of this cause.

■ Appellant's ninth point claims that the court committed error in excluding a speed restriction imposed by appellant upon the operation of its trains. It has been generally held by our courts that a violation of the rule or standard procedure is admissible as evidence on the question

of negligence. We feel the court, therefore, erred in excluding this proper evidence. 35 Tex.Jur. 434–5, and cases cited thereunder.

We feel that our disposition of the preceding points disposes of appellant's points 10 and 11. For the reasons stated above we feel that the court's refusal to submit appellant's requested issue as to whether or not Mrs. Hasting could, after she had stopped, found herself confronted with an immediate hazard, have then proceeded with safety, was error.

For this and the other errors described above, the judgment is reversed and the cause remanded for a new trial.

FRASER, J., concurs.

HAMILTON, Chief Justice (dissenting).

Appellant complains in its second point that the court erred in failing to render judgment for appellant because Mrs. Hasting was guilty of contributory negligence as a matter of law in violating Art. 6701d, Section 86(c) V.R.C.S. It bases its contention on the jury finding that as Mrs. Hasting approached the railroad crossing a train was approaching within approximately 1500 feet of the crossing, emitting a signal audible from such distance, and such train by reason of its speed and nearness to such crossing was an immediate hazard, and although she stopped within fifty feet and not less than fifteen feet from the crossing she proceeded in an attempt to cross when she could not safely do so. The writer agrees with the appellant in such contention. Plaintiff did not fulfill the requirements of the statute by merely stopping, she was further required not to proceed until she could safely do so, and that part of the statute is just as mandatory as the part requiring her to stop. The same circumstances found in this case to be existing by the jury, which made it the absolute duty of plaintiff to stop, also made it the absolute duty of plaintiff not to proceed. Although the court did not submit the issue as to whether she proceeded to cross when she could not

safely do so, from the facts of this case it is not essential to have such a jury finding, because there was no evidence whatsoever that the immediate hazard found to be existing as Mrs. Hasting approached the crossing ceased to exist or was lessened in any respect whatsoever after she stopped. It certainly is not the purpose of such statute to require a person to stop his automobile in the face of such an immediate hazard in the interest of safety, and then let it be a question for the jury as to whether such person was negligent in proceeding to cross said track in the face of such immediate hazard. Now if the evidence showed that after plaintiff stopped the train materially reduced its speed to such an extent that the immediate hazard of the train might no longer exist, then it may be a question for the jury as to whether she could proceed in safety. The word "safe" means freedom from danger. The facts in this case showed that the train was becoming more of a hazard to the crossing each second, rather than lessening. It is not a question of whether plaintiff could have made it across without getting hit if her engine had not died, or whether, as the engineer testified, she could have made it across if the pickup had not stopped. The question is, when she was stopped in a safe place, was it safe for her to proceed in an attempt to cross in the face of the immediate hazard. Reasonable minds cannot differ on the conclusion that it was not safe to proceed at such time. If it be held that when conditions exist that under the statute a motorist is required to stop, then the question of proceeding under the same circumstances is governed by the law of ordinary negligence, then the purpose of the statute is absolutely destroyed. Texas & N. O. R. Co. v. Stewart, Tex.Civ.App., 248 S.W.2d 177, w. r. n. r. e.; Zamora v. Thompson, Tex.Civ.App., 250 S.W.2d 626; Panhandle & Santa Fe Ry. Co. v. Karr, Tex.Civ.App., 257 S.W.2d 486; Peters v. Chicago, R. I. & P. R. Co., Tex.Civ.App., 257 S.W.2d 860, w. r. n. r. e.

It appears that this case has been fully developed. All the material facts concerning the crossing accident are undisputed. No good purpose could be served by

remanding the case for a new trial. The writer is of the opinion that the case should be reversed and rendered in favor of appellant, for the reasons stated above.